UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELLEN SCATORCHIA,

                      Plaintiff,              **MEMORANDUM** and
                                                                                  **OPINION**
   -against

                                                                               CV 01-3119 (TCP)(MLO)

COUNTY OF SUFFOLK and STEVEN DICKSON,
in his personal capacity,

                      Defendants.
------------------------------------------------------------X
PLATT, District Judge:

        This action was brought pursuant to 42 U.S.C. § 1983 ("Section 1983") by Ellen Scatorchia ("Plaintiff") against Defendants Steven Dickson ("Dickson"), a police officer employed by the Suffolk County Police Department ("SCPD"), and Suffolk County. Plaintiff alleges violations of her Fourth and Fourteenth Amendment rights. Plaintiff also brings claims under State tort law.

        Defendants move for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 on the grounds that (i) Plaintiff has demonstrated no deprivation of her Constitutional rights, and (ii) Dickson is entitled to qualified immunity.[1] For the following reasons, Defendants' motion is **GRANTED**.

---

[1] As this Court finds that Defendants are entitled to summary judgment because Plaintiff failed to demonstrate a Constitutional violation, it does not reach the question of whether Dickson is entitled to qualified immunity.

## BACKGROUND

In or about 1998, Plaintiff began working as a flag and radio operator for a construction company named JD Posillico. (Plaintiff's Deposition ("Pl.'s Dep.") at 10-11.) At that time, Dickson was an officer with the SCPD.

On or about August 12, 1998, JD Posillico assigned Plaintiff to work a construction job on the Long Island Expressway. (Pl.'s Dep. at 13-14.) On the same date, the SCPD assigned Dickson to direct traffic at Plaintiff's worksite. (*Id.* at 15.) Plaintiff and Dickson met at the construction site, and became engaged in a "normal conversation." (*Id.* at 22.) However, Dickson thereafter began making sexually charged remarks to which Plaintiff objected. (*Id.* at 23-24.) At some point during their conversation, Plaintiff turned around at Dickson's request and Dickson touched her right shoulder with his fingers. Plaintiff admits that the touch was not "groping or anything like that." (*Id*. at 29-30.) Dickson also propositioned Plaintiff a number of times and gave her his business card and beeper number. (*Id*. at 30-31.) Plaintiff repeatedly rejected his advances. Plaintiff and Dickson did not spend the entire day together; work required both parties to move locations and Plaintiff specifically requested she be moved away from him. (*Id*. at 31.)

During her deposition, Plaintiff stated she eventually recognized Defendant as an officer who had sexually harassed her during a traffic stop in 1986.[2] Plaintiff became understandably upset when she learned this, entered her

---

[2] The facts of the 1986 incident need not be addressed in detail because they occurred outside of the statute of limitations applicable to Plaintiff's 1983 claim.

2

car and exited the worksite. (*Id*. at 36-38.) Defendant followed Plaintiff out in his vehicle and briefly conversed with her, asking if she was "okay." (*Id.* at 38.) Plaintiff then drove away. The parties have not seen each other since August 12, 1998. (*Id*. at 42.) As a result of the incident, Defendant became the subject of an investigation by the Internal Affairs Bureau of the SCPD and was punished. (*Id.* at 49.) Plaintiff has not sought therapy or assistance after the incident, nor was she required to use any medication. (*Id*. at 55, 62.)

In May 2001, Plaintiff brought claims under Section 1983 against Dickson and Suffolk County. Plaintiff alleges that Dickson violated her civil rights and privileges. (Compl. ¶ 17.) Plaintiff further alleges that the County of Suffolk directly caused the violation of her rights by failing to "control, train, and/or supervise its officers or acknowledge and/or inspect allegations made against them . . . ." (Compl. ¶ 30.) On September 29, 2005 the parties filed motions for summary judgment. Plaintiff failed to submit opposition briefs to Suffolk County's motion for summary judgment and has therefore apparently decided not to contest this point.

## DISCUSSION

**I. Summary Judgment Standard**

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the specific pleadings, and 'designating specific facts showing there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering a summary judgment motion, this Court views "the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998).

**II. Section 1983 Claims against Dickson**

Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create any substantive rights, it only provides a procedure for redress for a deprivation of rights established elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish a claim under Section 1983, plaintiff must show: (1) that the conduct complained of was

committed by persons acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Dorman v. Castro*, 214 F. Supp. 2d 299, 303 (E.D.N.Y. 2004); *see also Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiff meets the first prong of the test, but fails to meet the second.

    A. *Color of Law*

It is clear that Dickson acted under "color of law" during his interactions with Plaintiff. The Supreme Court has held that government employees act under color of law when they perform their professional duties, whether they act in compliance with state law or contrary to it. *Monroe v. Pape*, 365 U.S. 167, 171-72 (1961) *overruled on other grounds*, *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Dickson acted under color of law because he interacted with Plaintiff while performing his job. Dickson was on duty, in uniform, and in a marked police car throughout his dealings with Plaintiff. (Pl.'s Dep. at 15, 37.) It is immaterial that the parties' conversation was personal in nature. *See id* (holding that it is irrelevant to color of law analysis that defendant officers' particular actions were not sanctioned by the municipality in some formal sense).

The case Dickson cites to show that he was not acting under color of State law, *Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994), is wholly inapposite. In *Pitchell*, the Second Circuit found that an off duty police officer, who shot a

guest in his home with his own weapon, was not acting under color of State law. 13 F.3d at 547-48. Clearly, the conduct in *Pitchell* differs from this case where Dickson was in uniform and on duty when the incident occurred.

      B. *Conduct deprived Plaintiff of a Constitutional Right*

Plaintiff alleges Dickson violated her rights under the Fourth Amendment as well as her Fourteenth Amendment rights to substantive due process and equal protection. (Compl. ¶ 29.) Even considering the facts in a light most favorable to Plaintiff, this Court finds that she has failed to show a deprivation of any such rights.

A Fourth Amendment violation necessitates a "seizure" by government authorities. An individual is seized by the police "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Cruz v. Miller*, 255 F.3d 77, 82 (2d Cir. 2002) (citations omitted). Seizures generally require physical force or submission to an assertion of authority. *See Brower v. County of Inyo*, 489 U.S. 593, 595-97 (1989). Here, Dickson did not use physical force against the Plaintiff; in fact, Plaintiff stated he never once left his vehicle. (Pl.'s Dep. at 37.) Moreover, Plaintiff clearly believed she was free to leave Dickson's presence because she did so twice and also requested reassignment to a location away from Dickson. (*Id*. at 28-29, 31, 39.) As Plaintiff cannot establish that she was seized by Diskson, her Fourth Amendment claim fails.

Plaintiff also claims that Dickson violated her substantive due process rights under the 14th Amendment. (Compl. ¶ 29.) Such rights are violated only when the government has engaged in conduct so egregious it "shocks the conscious." *Rochin v. California*, 342 U.S. 165, 172 (1952). The Supreme Court has "been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Courts generally find that officers' conduct "shocks the conscious" where force is used with intent to harm a person. *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). Conduct that is merely incorrect or ill advised does not meet this high standard. *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). In the sexual harassment context, courts have found that conduct "shocked the conscious" where a teacher committed multiple sexual assaults on his high school students *(Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir. 1989)) and where a sheriff raped a murder suspect. *Bennett v. Pippin*, 74 F.3d 578 (5th Cir 1996).

The conduct here is clearly distinguishable. Dickson's touching of Plaintiff's shoulder, while inappropriate, was not a sexual assault. Plaintiff admitted that Dickson "was not groping or anything like that." (Pl.'s Dep. at 29.) This touch would likely not even be considered a battery because Plaintiff appears to have consented. However, even if the touch was a battery, it would not violate her substantive due process rights. *See Lewis*, 523 U.S. at 848 ("our Constitution .

. . does not purpose to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries. . . .") (citations omitted).

Moreover, Plaintiff's Constitutional rights were not violated by Dickson's inappropriate sexual comments. In *Keyes v. City of Albany*, 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984), Plaintiffs of Mexican descent filed a Section 1983 claim alleging that police officers directed a stream of verbal abuse, including racial epithets at Plaintiff's children. The court held that "the use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim." *Id*; *see also Zeno v. Cropper*, 650 F. Supp. 138, 141 (S.D.N.Y. 1986). This Court agrees and also points out that Plaintiff cites to no case where a court upheld a Section 1983 claim because officers used abusive language.

The case Plaintiff does cite, *Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002), is inapposite. In *Poe*, a Connecticut state trooper videotaped Plaintiff, a female civilian, changing her clothes. The Second Circuit found that the trooper had violated Plaintiff's substantive due process "right to privacy in [her] unclothed body[.]" *Id.* at 136. Here, of course, there is no allegation that Plaintiff was ever unclothed, and thus *Poe* is inapplicable.

Lastly, Plaintiff alleges that Dickson violated her 14th Amendment rights under the Equal Protection Clause. The Second Circuit has held that "in some circumstances a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual

8

harassment in the workplace." *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir. 1994). However, courts have apparently limited such claims to discrimination where Plaintiff is employed by a government body. *See id.* (upholding 1983 claim where former trooper sued the New York State Police); *see also Annis v. County of Westchester, N.Y.*, 36 F.3d 251, 253-54 (2d Cir. 1994) (holding that Plaintiff properly brought 1983 claim where police lieutenant sued her employer, the Department of Public Safety of Westchester County). Plaintiff points to no case allowing a Section 1983 claim for violation of the Equal Protection Clause where Plaintiff is employed by a private entity. Moreover, such claims generally involve discrimination by a supervisor at the workplace. *See id*; *Gierlinger,* 15 F.3d at 34 . While the conduct here occurred at Plaintiff's worksite, it did not involve her supervisor. Again, Plaintiff points to no relevant case law. Accordingly, this Court finds Plaintiff has no grounds to claim a violation of the Equal Protection Clause.

**III. Section 1983 Claims against Suffolk County**

Plaintiff alleges that Suffolk County is liable under Section 1983 because the SCPD's failure to properly train and supervise its officers directly caused the violation of Plaintiff's rights. (Compl. ¶ 30.) In *Monell*, 436 U.S. at 690, the Supreme Court authorized claims against municipalities brought under Section 1983 ("*Monell* claims"). The *Monell* Court ruled that "the touchstone of the 1983 action against a government body is an allegation that official policy is

responsible for a deprivation of rights protected by the Constitution . . . ." *Id.* Obviously, Plaintiff must demonstrate a deprivation of rights before holding a municipality liable under *Monell*. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) (holding that the "first inquiry" in any 1983 claim is whether the plaintiff has shown a "deprivation of a right secured by the Constitution and laws.") (citations omitted). Plaintiff has failed to make any such showing, and thus, her *Monell* claim must fail.

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED**. Furthermore, the Plaintiff's State law claims are dismissed with prejudice since this Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).


**SO ORDERED**

_/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
January 24, 2006